**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN C. BOYS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MASS MUTUAL LIFE INSURANCE COMPANY, et al.,<br><br>　　　　　Defendants. | Civil Action No. 13-4506 (JLL) (JAD)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the court by way of Defendants Massachusetts Mutual Life Insurance Company and MML Bay State Life Insurance Company ("MassMutual")'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 16). The Court has considered the parties' submissions in support of and in opposition to MassMutual's motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court **GRANTS** summary judgment in favor of MassMutual.

**I.     BACKGROUND**

Plaintiff John C. Boys is a longtime client of MassMutual. (Defs.' App'x 221, ECF No. 18). He began planning his estate with a MassMutual agent, Carol Green, during the 1980s while in medical school in Charleston, South Carolina. (*Id.* at 212, 221). He purchased a life insurance policy on his life from MassMutual in November 1988. (*Id.* at 209, 212). Thereafter, in 1993, Plaintiff relocated to Greeneville, Tennessee, where he continued to do business with MassMutual through a different agent, David Harris. (*Id.* at 212, 217, 221). During the late

1

1990s, Plaintiff purchased six variable life select ("VLS") policies from MassMutual on the lives of his twin sons, John F. Boys and James A. Boys, who were less than seven years old at the times of purchase. (*Id.* at 209, 217, 221). A chart summarizing the VLS policies, which are at the center of this litigation, follows:

| Policy Number | Issue Date | Insured |
|---|---|---|
| 7882890 | August 28, 1996 | John F. Boys |
| 7882892 | August 28, 1996 | James A. Boys |
| 7893019 | February 14, 1997 | James A. Boys |
| 7893021 | February 14, 1997 | John F. Boys |
| 7925080 | May 7, 1998 | John F. Boys |
| 7925081 | May 7, 1998 | James A. Boys |

(*Id.* at 209).[1]

These VLS policies, according to a March 2002 letter Plaintiff sent to MassMutual's chairman of customer relations, John Milbier, have a combined death benefit of more than six million dollars. (*Id.* at 212). In that letter, Plaintiff questioned the death benefit's appropriateness, noting his discovery that no children his sons' ages had such a benefit and his belief that it was "totally outrageous in number." (*Id.*). Plaintiff further noted that his attorney concurred with him and asked MassMutual to scrutinize the VLS policies. (*Id.* at 213). Plaintiff reiterated these concerns in an April 2002 letter to a MassMutual compliance specialist, Barbara

---

[1] The parties dispute the status of two other insurance policies on the lives of James A. Boys and John F. Boys, policy numbers 7879736 and 7879739. On the one hand, Plaintiff maintains that MassMutual issued those policies. (Lucy Z. Boys Aff. ¶ 2, ECF No. 55-2). Plaintiff points to a letter, dated April 22, 2002, wherein a MassMutual compliance specialist, Barbara A. Moran, noted that Plaintiff's wife, Lucy Z. Boys, owned the policies and that they were active and paid current. (Defs.' App'x 231). On the other hand, MassMutual maintains that Moran was mistaken—although it assigned the policies when it received Plaintiff's applications, it cancelled and/or did not issue them because Plaintiff withdrew the applications. (Defs.' Supplemental Br. 2-3, ECF No. 54). MassMutual points to an August 1996 letter from Harris to an employee in MassMutual's underwriting department, Jack Royko, directing him to withdraw policy numbers 7879736 and 7879739. (Ex.1, ECF No. 54-1). Ultimately, the Court need not resolve the parties' dispute over the status of the policies to decide this motion. In a March 2002 letter to a MassMutual employee, Plaintiff explained his concern that the insurance policies he had purchased from MassMutual placed an "exorbitant" amount of insurance on his sons' lives. (Defs.' App'x 212-13). In that letter and in an April 2002 letter to MassMutual reiterating the same concern, Plaintiff did not list each policy by its number, but instead referred collectively to the policies he had purchased from MassMutual. (*Id.* at 212-13, 215). Thus, Plaintiff's concern extended to policy numbers 7879736 and 7879739 to the extent that they existed at that time.

2

Moran, noting: "The amounts of insurance sold as investment are very excessive by all professionals in the business that I have talked with about this situation." (*Id.* at 215). Later that month, Moran responded in a letter that "each [VLS] policy was suitable for [Plaintiff's] known financial needs at the time of each sale." (*Id.* at 233).

Plaintiff continued to correspond in writing with various MassMutual employees about the VLS policies. In a February 2010 letter to a MassMutual general agent, Kevin Collins, Plaintiff noted: "It is and has always been my belief that the amount and type of insurance sold to me is and was inappropriate for my estate planning." (*Id.* at 217). He explained: "Over the past years, I've described my life insurance situation to other insurance professionals and they were dubious to the amounts, especially on minor children in particular. They questioned how the face amounts got through Underwriting, given no income and net worth on my preteen boys." (*Id.*). Plaintiff brought up the same concerns in a November 2010 letter to MassMutual's CEO, Roger W. Crandall, noting, among other things, that the combined multi-million dollar death benefit on his sons' lives bothered him from day one. (*Id.* at 221-24). In a December 2010 letter, MassMutual's director of compliance, Jeffrey R. James, responded to Plaintiff on Crandall's behalf. (*Id.* at 235-37). James reaffirmed the company's belief that the VLS policies were suitable at the time of sale and refused to provide Plaintiff with extra-contractual relief. (*Id.* at 236).

Plaintiff subsequently filed the operative Complaint in this matter before Chief Judge Thomas A. Varlan of the United States District Court for the Eastern District of Tennessee on November 9, 2012. (Compl., ECF No. 1). The Complaint alleges that MassMutual and its agents engaged in three types of misconduct when they sold Plaintiff the VLS policies. First, MassMutual's agents allegedly misrepresented the policies' utility as an investment and estate

3

planning tool. (*Id.* at ¶ 7). Second, MassMutual's agents allegedly fraudulently altered Plaintiff's applications for the policies without his knowledge and/or consent. (*Id.*). Third, MassMutual allegedly negligently underwrote the policies even though it knew that its agents had misrepresented the policies' utility and fraudulently altered the applications. (*Id.* at ¶ 8).

On January 28, 2013, MassMutual filed a motion to transfer venue to this Court pursuant to 28 U.S.C. § 1404(a) and a motion to dismiss, or, in the alternative, for summary judgment. (ECF Nos. 14, 16). MassMutual argues that Plaintiff's claims are barred by the Settlement Agreement approved by this Court in *Varacallo v. Massachusetts Mutual Life Insurance Co.*, 226 F.R.D. 207 (D.N.J. 2009). In July 2013, Chief Judge Varlan granted MassMutual's motion to transfer venue, reasoning that this Court is "uniquely equipped" to determine whether the *Varacallo* Settlement Agreement bars Plaintiff's claims. *Boys v. Mass Mut. Life Ins. Co.*, No. 12-445, 2013 WL 3834010, at *1 (E. D. Tenn. July 24, 2013).

On June 17, 2014, the Court notified the parties of its intent to consider MassMutual's motion as one for summary judgment. (ECF No. 53). In doing so, the Court provided Plaintiff with an opportunity to challenge the authenticity of the letters that he wrote to MassMutual and the accuracy of the above chart summarizing the VLS policies on his sons' lives. (*Id.*). Plaintiff does not challenge the authenticity of the letters, but he maintains that the chart is incomplete because it does not include information pertaining to policy numbers 7879736 and 7879739.[2] (Pl.'s Supplemental Br. 1-2, ECF No. 55). The Court now addresses MassMutual's motion.

## II.   LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is

---

[2] As discussed above, the Court need not address the parties' dispute over these policies to resolve MassMutual's motion for summary judgment.

4

entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III.  DISCUSSION

MassMutual maintains that it is entitled to summary judgment on two alternative bases. First, MassMutual contends that the applicable statute of limitations bars Plaintiff's claims. (Defs.' Br. 16-19, ECF No. 17). Alternatively, MassMutual contends that the *Varacallo* Settlement Agreement bars Plaintiff's claims. (*Id.* at 19-24).

####   A.   Whether the Applicable Statute of Limitations Bars Plaintiff's Claims

MassMutual contends that the applicable statute of limitations, Tenn. Code Ann. § 28-3-105, bars Plaintiff's claims. (*Id.* at 16). That statute provides that a plaintiff must commence an action for an injury to personal property within three years of the accrual of the cause of action. Tenn. Code Ann. § 28-3-105. According to MassMutual, Plaintiff's claims accrued in March 2002, at the latest, because Plaintiff was aware of the allegations that are at the heart of his Complaint, *i.e.*, that MassMutual induced him into purchasing unsuitable life insurance, by that

5

date. (*Id.* at 16-17). In support, MassMutual points to Plaintiff's March 2002 letter to the company's chairman of customer relations, in which he questioned the suitability of the VLS policies on his sons' lives, and noted that he had spoken with others, including his CPA and attorney, about the policies. (*Id.* at 17).

Plaintiff counters that the statute of limitations on his claims did not accrue in 2002. (Pl.'s Opp'n Br. 1, ECF No. 51). Instead, according to Plaintiff, "he has continuous causes of action for fraud, misrepresentation, and negligence . . . because the agents of MassMutual made continuous misrepresentations to [him] to induce him to continue to make premium payments on the insurance policies at issue in this litigation." (*Id.*). In support, Plaintiff refers solely to the Supreme Court of New Jersey's approach to the continuing tort doctrine, as set forth in *Wilson v. Wal-Mart Stores,* 158 N.J. 263 (1999). Pursuant to *Wilson*, "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." 158 N.J. at 272 (citation omitted). MassMutual rebuts that Plaintiff's reliance on *Wilson* is misplaced because New Jersey law does not apply here; instead Tennessee law applies. (Def.'s Reply Br. 2-4, ECF No. 52). The Court agrees with MassMutual.

When a civil action based on diversity of citizenship is transferred from one district court to another pursuant to 28 U.S.C. § 1404(a), "the transferee forum must apply the law of the initial forum." *Amica Mut. Ins. Co. v. Fogel,* 656 F.3d 167, 171 (3d Cir. 2011) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964)). Here, the United States District Court for the Eastern District of Tennessee transferred Plaintiff's action to this Court pursuant to 28 U.S.C. § 1404(a). Consequently, this Court must apply Tennessee law. *See Ferens v. John Deere Co.,*

494 U.S. 516, 523 (1990) ("A transfer under § 1404(a) . . . does not change the law applicable to a diversity case.").

In Tennessee, "[t]he applicable statute of limitations in a particular cause [of action is] determined according to the gravamen of the complaint." *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977) (citations omitted). In other words, "the appropriate statute of limitations is determined by the type of injuries claimed and the damages sought." *Electric Power Bd. v. Monsanto Co.*, 879 F.2d 1368, 1375 (6th Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990). Here, Plaintiff's claimed injury is economic: he invested over $360,000 in his sons' VLS policies because of the alleged misrepresentations that MassMutual's agents made to him. (Compl. ¶ 13). Plaintiff seeks the return of this money and the award of punitive damages. (*Id.* at ¶¶ 13-14). "[A]n economic loss sustained by a plaintiff from fraud or misrepresentation is an 'injury to personal property . . . .'" *Johnson v. Welch*, No. M2002-00790-COA-R3-CV, 2004 WL 239756, at *22 (Tenn. Ct. App. Feb. 9, 2004) (citing *Vance*, 547 S.W.2d at 932). Pursuant to Tenn. Code Ann. § 28-3-105, actions for injuries to personal property—including those sounding in misrepresentation, fraud, or negligence—have a three year statute of limitations. *Electric Power Bd.*, 879 F.2d at 1375. Having determined that Tenn. Code Ann. § 28-3-105 applies to Plaintiff's claims,[3] the Court must next determine when those claims accrued.

In Tennessee, pursuant to the discovery rule, a cause of action for property damages "accrues at the time the injury occurs, or when it is discovered, or when in the exercise of reasonable care and diligence the injury should have been discovered." *Prescott v. Adams*, 627 S.W.2d 134, 138 (Tenn. Ct. App. 1981). This rule "is not intended to permit a plaintiff to delay filing suit until the discovery of all the facts that effect the merits of his . . . claim." *Redwing v.*

---

[3] To the extent that Plaintiff brings a claim for breach of fiduciary duty, the three year statute of limitations set forth in Tenn. Code Ann. § 28-3-105 applies to that claim, as well. *See Smith v. Hilliard*, No. 11-172, 2014 WL 223668, at *4 (E. D. Tenn. Jan. 21, 2014) (collecting cases).

7

*Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (citing *Mills v. Booth*, 344 S.W.3d 922, 929 (Tenn. Ct. App. 2010)). Indeed, a cause of action may accrue under the discovery rule even when a plaintiff is unaware of the specific type of claim he has or the full extent of the damages. *See id.* (collecting cases). In the final analysis, "'[i]t is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial.'" *Shadrick v. Coker*, 963 S.W.2d 726, 734 (Tenn. 1998) (quoting *Stanbury v. Bacardi*, 953 S.W2d 671, 678 (Tenn. 1997)).

Here, Plaintiff had discovered the allegation at the center of his Complaint, *i.e.*, that MassMutual fraudulently induced him into purchasing unsuitable life insurance, by March 2002. At that time, in a letter to MassMutual's chairman of customer relations, Plaintiff noted that he had spoken with his CPA and estate planning team about the VLS policies on his sons' lives. (Defs.' App'x 212). He noted his belief that the death benefit was "totally outrageous" and his subsequent discovery "that no other children their age [had] such a death benefit for any reason whatsoever." (*Id.*). He even noted that his attorney concurred with him. (*Id.* at 213). Plaintiff reiterated these concerns in an April 2002 letter to a MassMutual compliance specialist, noting: "The amounts of insurance sold as investment are very excessive by all professionals in the business that I have talked without about this situation." (*Id.* at 215). What is more, in his November 2010 letter to MassMutual's CEO, Plaintiff explicitly stated that the combined multi-million dollar death benefit on his sons' lives bothered him from day one. (*Id.* at 221-24). Based on these letters, no reasonable trier of fact could conclude that Plaintiff did not know or have notice that MassMutual's wrongful conduct had injured him by March 2002. Because Plaintiff did not bring this action until November 2012—more than a decade later—Plaintiffs' claims are

8

time barred under Tenn. Code Ann. § 28-3-105.[4] *See, e.g., Graham v. Lake Park Condo-Signal View*, No. E2011-02739, 2013 WL 5974921, at *5 (Tenn. Ct. App. Nov. 8, 2013) (concluding that Tenn. Code Ann. § 28-3-105 barred plaintiff's fraud and breach of fiduciary claims because plaintiff had discovered defendant's wrongful conduct more than three years before filing suit).

    B.    <u>Whether the *Varacallo* Settlement Agreement Bars Plaintiff's Claims</u>

Because the applicable statute of limitations, Tenn. Code Ann. § 28-3-105, bars Plaintiffs claims, the Court declines to address MassMutual's contention that the *Varacallo* Settlement Agreement also bars those claims.

### IV. CONCLUSION

For the reasons discussed herein, the Court **GRANTS** MassMutual's motion for summary judgment.

An appropriate Order accompanies this Opinion.

DATED: 22 of July, 2014.

                                                             JOSE L. LINARES
                                                            U.S. DISTRICT JUDGE

---

[4] Under Tennessee law, the doctrine of continuing tort does not save Plaintiff's claims. Plaintiff cites no precedent extending this narrow doctrine to garden-variety tort claims for misrepresentation, fraud, or negligence in Tennessee, and this Court is not aware of any such precedent. *See Seaton v. Seaton*, 971 F. Supp. 1188, 1195 (E. D. Tenn. 1997) (noting that Tennessee courts apply the continuing tort doctrine in only a few types of cases, and recognizing the tension between the doctrine and the discovery rule).